UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAAD BAHODA,

        Petitioner,

Case No. 17-cv-13505
Hon. Matthew F. Leitman

v.

SHERMAN CAMPBELL,

        Respondent.

_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF #1), (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS

Petitioner Saad Bahoda is a state prisoner in the custody of the Michigan Department of Corrections. On April 11, 2013, a jury in the Macomb County Circuit Court found Bahoda guilty of assault with intent to do great bodily harm, Mich. Comp. Laws § 750.84. The state trial court thereafter sentenced Bahoda as a habitual felony offender to 3 to 15 years in prison to be served consecutively to a life sentence for which he was on parole when the assault occurred.

On October 26, 2017, Bahoda filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. (*See* Pet., ECF #1.) The petition raises five claims: (1) Bahoda was denied the effective assistance of counsel when his trial attorney failed to request a self-defense jury instruction, (2) Bahoda was denied the

effective assistance of counsel when his trial counsel allowed fraudulent affidavits to be submitted to the trial court in support of a pretrial motion, (3) Bahoda was denied the effective assistance of counsel when his former attorney negotiated an immunity agreement for a prosecution witness, (4) Bahoda was denied the effective assistance of counsel when his appellate counsel abandoned an agreed-to evidentiary hearing on Bahoda's motion for a new trial, and (5) the trial court sentenced Bahoda based on inaccurate information when it misapprehended the effect Bahoda's sentence would have on his prior life sentence, and the court impermissibly considered facts not proven beyond a reasonable doubt in scoring the sentencing guidelines. (*See id.*)

The Court has carefully reviewed Bahoda's claims and concludes that they are without merit. Therefore, the Court **DENIES** the petition. The Court further **DENIES** Bahoda a certificate of appealability. However, the Court **GRANTS** Bahoda permission to appeal *in forma pauperis*.

# I

In 2009, Bahoda was paroled from a life sentence that he was serving as the result of a narcotics conviction in the Oakland County Circuit Court. The incident giving rise to the conviction challenged here occurred during the evening of August 27, 2011. The Michigan Court of Appeals summarized the circumstances of the offense and trial as follows:

Defendant's conviction arose from an incident at a "hookah lounge" located next to a restaurant where defendant was attending a family function. Defendant left the restaurant, intervened in a fight between his nephew and Nadeem Edward, and ended up cutting Edward with a pocketknife. Defendant testified at trial that he used his knife against Edward in self-defense. Defendant filed two posttrial motions for a new trial based on ineffective assistance of counsel. One motion was filed by counsel and alleged that trial counsel, Steven Kaplan, was ineffective for failing to request a jury instruction on self-defense. The other motion was filed by defendant and alleged additional claims against Kaplan, as well as claims against two other attorneys, Robert Berg, who previously represented defendant, and Brian Legghio, who allegedly consulted defendant, but never represented him. The trial court denied both motions without conducting a Ginther hearing even though the parties had initially agreed to a *Ginther* hearing on the issue raised in counsel's motion.

*People v. Bahoda*, 2016 WL 3267081, at *1 (Mich. Ct. App. June 14, 2016).

After Bahoda was convicted, he pursued a direct appeal in the Michigan Court of Appeals. His brief on appeal, filed by appellate counsel, raised the following claims:

> I. The trial court abused its discretion in denying the motion for new trial on the basis of ineffective assistance of trial counsel where trial counsel inexplicably failed to request a self-defense instruction although the evidence supported it. Bahoda was denied his constitutional right to the effective assistance of counsel when trial counsel failed to request a self-defense instruction, which prejudiced Bahoda, entitling him to a new trial.

> II. Bahoda's Sixth Amendment right to effective counsel was violated when attorney Robert Berg allowed forged affidavits to be submitted to the court in pretrial proceedings without having investigated them.

3

III. Bahoda was deprived of his Sixth Amendment right to the effective assistance of counsel when, over his objection, one of the prosecution's chief witnesses was represented by an attorney who had previously consulted with Bahoda for charges directly related to this case, and Bahoda's trial counsel (1) failed to object, (2) failed to request that the witness be disqualified from testifying, and (3) failed to request that the prosecutor's office be disqualified, or at a minimum that the prosecutor on this case be disqualified. Further, the trial court abdicated its responsibility to hold a separate evidentiary hearing to ascertain the prejudice to [Bahoda's] right to a fair trial when the issue was brought up in Bahoda's pro per motion for an evidentiary hearing before trial.

IV. The trial court abused its discretion in denying an evidentiary hearing when both the prosecutor and appellate counsel had agreed that a hearing was necessary to decide factual issues pertaining to ineffective assistance of counsel. Bahoda's appellate counsel (D. Rust) was ineffective in requesting that the trial court decide the motion for a new trial without holding the evidentiary hearing that both prior appellate counsel and the prosecutor had agreed was necessary.

V. Bahoda was sentenced on the basis of inaccurate information and in violation of due process where the effect of his 3 to 15 year prison sentence for the current offense was Bahoda's return to prison for the rest of his natural life. Further, Bahoda is entitled to resentencing under *People v. Lockridge*.

(ECF #6-30 at Pg. ID 1206-08.)

Bahoda filed a motion to remand along with his appellate brief, seeking a hearing on his ineffective assistance of counsel claims, but the Michigan Court of Appeals denied that motion in a standard order on February 1, 2016.

4

On June 14, 2016, the Michigan Court of Appeals affirmed Bahoda's convictions and sentence in an unpublished opinion. *See Bahoda*, 2016 WL 3267081. Bahoda then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims as in his initial appeal. The Michigan Supreme Court denied leave to appeal by form order. *See People v. Bahoda*, 892 N.W.2d 362 (Mich. 2017) (Table).

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

# III

## A

### 1

Bahoda's first four habeas claims assert that he was denied the effective assistance of counsel by the various attorneys that represented him at different times during state court proceedings. All of Bahoda's claims of ineffective assistance were adjudicated on the merits by the state courts during his direct appeal.

Claims of ineffective assistance of counsel are subject to the two-prong standard described in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* asks: (1) whether counsel was deficient in representing the defendant; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the defendant of a fair trial. *See id*. at 687. To satisfy the first prong of the *Strickland* inquiry, a habeas petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that … the challenged action 'might be considered sound trial strategy.'" *Id*. at 688, 689. The "prejudice" component of a *Strickland* claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372

(1993). Prejudice, under *Strickland*, requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Under AEDPA, claims of ineffective assistance of counsel are subject to a "doubly deferential" standard of review. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (quotation omitted). "[T]he question" for this Court "is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

## 2

Bahoda first claims that his trial attorney, Steven Kaplan, was ineffective for failing to request a self-defense instruction. Bahoda argues that Kaplan should have requested such an instruction because the evidence created a question of fact for the jury as to whether Bahoda was in fear for his safety or for the safety of his sister when he waived the knife out in front of him during the altercation in the parking lot.[1]

---

[1] In state court, Bahoda asserted that he was entitled to a self-defense instruction both under common law and under Michigan's Self-Defense Act. In the petition, Bahoda limits his claim to entitlement to an instruction under the Self-Defense Act. (*See* Pet., ECF #1 at Pg. ID 29-33.)

The Michigan Court of Appeals considered this claim on direct appeal[2] and

rejected it:

> Although defendant testified that he acted in self-defense, the law did not support a claim of self-defense at the time of trial. Defendant apparently does not dispute that he used deadly force. He contends that he was "justified in possessing and using" his knife in self-defense because Edward and his friends presented a threat of serious harm. Under the common law, "[t]he necessity element of self-defense normally requires that the actor try to avoid the use of deadly force if he can safely and reasonably do so, for example by applying nondeadly force or by utilizing an obvious and safe avenue of retreat." *People v. Riddle*, 467 Mich. 116, 119 (2002) (footnote omitted). This is because if an attack can be safely avoided, the use of deadly force is not necessary. *Id.* at 129. Because defendant was in a public place and could have retreated back inside the lounge, he could not have utilized the common-law defense of self-defense.
>
> The Self-Defense Act (SDA), MCL 780.971 et seq., modified the common-law duty to retreat. Under the SDA, a person may use deadly force "with no duty to retreat" if he (a) is not engaged in the commission of a crime, (b) is

---

[2] When Bahoda presented this claim to the state trial court in his motion for a new trial, the court rejected it on the basis that the evidence indicated that Bahoda was the initial aggressor, and he therefore was not entitled to claim self-defense on that basis. *See People v. Dupree*, 788 N.W.2d 399, 407 (Mich. 2010) (a person who acts as the initial aggressor does not act in justifiable self-defense). Bahoda correctly notes that while the prosecutor's witnesses testified that Bahoda was the aggressor during the altercation, Bahoda's own testimony indicated that Edward and his two friends confronted him when he exited the hookah lounge, thus creating a question of fact for the jury as to whether Bahoda was the initial aggressor. Nevertheless, while it may be true that the trial court erroneously determined that the trial record conclusively showed that Bahoda was the initial aggressor, the Michigan Court of Appeals relied on a different basis for rejecting Bahoda ineffective-assistance claim on direct appeal.

8

in a place he has the legal right to be, and (c) "honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself . . . ." MCL 780.972(1)(a).

While the SDA does not impose any duty to retreat, it does require that the defendant not be engaged in the commission of a crime. Here, defendant was engaged in the commission of a crime: he had a pocketknife concealed on or about his person, which was used as a dangerous weapon (CCW), MCL 750.227(1). While the SDA "does not diminish an individual's right to use deadly force . . . in self-defense . . . as provided by the common law of this state in existence on October 1, 2006," MCL 780.974, this Court had long ago rejected self-defense as a defense to CCW. *People v. Townsel*, 13 Mich. App. 600, 601 (1968).

When the crime was committed, the common-law defense of self-defense had been recognized as a legitimate defense to the charge of felon in possession of a firearm, *People v. Dupree*, 486 Mich. 693, 712 (2010), and as of the time of trial, Dupree had been extended to a claim of self-defense under the SDA, *People v. Guajardo*, 300 Mich. App. 26, 40 (2013), but those cases had not been extended to other possessory offenses such as CCW. Because defendant did not have a legally viable claim of self-defense, Kaplan was not ineffective for failing to request an instruction thereon. "Trial counsel's failure to request an instruction inapplicable to the facts at bar does not constitute ineffective assistance of counsel." *People v. Truong (After Remand)*, 218 Mich. App. 325, 341 (1996). Further, while Kaplan could have argued for an extension of the law to CCW, which would in turn warrant an instruction on self-defense, "defense counsel's performance cannot be deemed deficient for failing to advance a novel legal argument." *People v. Reed*, 453 Mich. 685, 695 (1996) (footnote omitted). Therefore, Kaplan was not ineffective for failing to request a self-defense instruction that was not available at the time of trial.

*Bahoda*, 2016 WL 3267081, at *3-5.

Bahoda is not entitled to habeas relief based upon the self-defense instruction claim. As the Michigan Court of Appeals explained, at the time of Bahoda's trial, a defendant was not entitled to a self-defense instruction under the Self-Defense Act where, as here, the defendant was engaged in the crime of carrying a concealed weapon at the time he claims to have defended himself or others. It is well-established that a defense attorney is not ineffective for failing to request an instruction that his client is not entitled to receive. *See*, *e.g.*, *Mitzel v. Tate*, 267 F.3d 524, 538 (6th Cir. 2001) (holding habeas petitioner was "unable to establish an ineffective assistance of counsel claim with respect to his attorney's failure to request a jury instruction" where petitioner was not entitled to receive that instruction at trial); *Medley v. Conerly*, 2011 WL 2604845, at *7 (E.D. Mich. June 30, 2011) ("Since [p]etitioner was not entitled to an adverse inference instruction, his counsel was not ineffective for failing to request such an instruction, and [p]etitioner has therefore failed to establish the first prong of the *Strickland* test"). Thus, the Michigan Court of Appeals did not unreasonably reject Bahoda's ineffective-assistance claim based on his trial counsel's failure to ask for a self-defense instruction. *See*, *e.g.*, *Jones v. Rivard*, 2014 WL 7096043, at *8 (E.D. Mich. Dec. 12, 2014) (counsel not ineffective for failing to request self-defense instruction

10

where state court determined that habeas petitioner was not entitled to protection of Self-Defense Act under facts of the case).

In the petition, Bahoda highlights that after his trial, the Michigan Supreme Court held that a defendant could assert a self-defense defense to the charge of carrying a concealed weapon ("CCW"). *See People v. Triplett*, 878 N.W.2d 811 (Mich. 2016). Bahoda insists that this change in the law underscores that (1) he (Bahoda) may not have been guilty of CCW because he would have had a self-defense defense to that charge, (2) he was thus entitled to a self-defense instruction under the Self-Defense Act, and (3) Kaplan should have requested a self-defense instruction. The Court disagrees. At the time of Bahoda's trial, "self-defense [was] not a defense to CCW." *People v Townsel*, 164 N.W.2d 776, 777 (Mich. App. 1968). Generally, trial counsel is not charged with anticipating a change in the law when requesting jury instructions, and here it was not unreasonable for Kaplan not to have anticipated the change in self-defense law. Indeed, even after Bahoda's trial, the Michigan Court of Appeals held in a published opinion that the Self-Defense Act did *not* apply when the defendant was engaged in the crime of carrying a concealed weapon. *See People v. Triplett*, 870 N.W.2d 333 (Mich. App. 2015) *rev'd Triplett*, 878 N.W.2d 811. Thus, Bahoda has not shown that Kaplan was ineffective for failing to request a self-defense instruction.

Finally, the Court notes that Bahoda appears to take issue with the Michigan Court of Appeals' determination that he was committing the crime of CCW at the time he claims to have acted in self-defense. But this Court will not second-guess the state court's interpretation and application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 68, 72 (1991). And to the extent that Bahoda argues that the state court erroneously found the facts related to whether he was committing the crime of CCW, he has not shown that the challenged factual findings were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," and thus he is not entitled to habeas relief. 28 U.S.C. § 2254(d)(1).

## 2

Bahoda next claims that another attorney who represented him prior to trial, Robert Berg, rendered ineffective assistance of counsel when Berg failed to ascertain that affidavits executed in support of a motion for a pretrial line-up procedure were fraudulently obtained. Bahoda states that he was not involved in the procurement of the false affidavits, but that presentation of the affidavits resulted in the prosecutor obtaining leverage against his ex-girlfriend, Natalie Allie, who was allegedly involved in the affidavit scheme. Bahoda argues that because Allie had potential criminal exposure as a result of the affidavit scheme that Berg failed to detect, she was compelled to testify against him at trial in exchange for immunity. Bahoda

reasons that if Berg had investigated the matter before filing the line-up motion, Allie would never have been compelled to testify against Bahoda at trial.

The Michigan Court of Appeals reviewed this claim on direct appeal and rejected it:

> Defendant also argues that Berg made a serious error by presenting the false affidavits because it turned out that Allie was involved in their procurement. According to defendant, that in turn led to the possibility that Allie could be criminally charged and it was only due to a grant of immunity that she testified against defendant. Defendant has not shown that he was prejudiced by the alleged error. There is nothing to indicate that Allie would not have testified against defendant but for the alleged grant of immunity and the testimony she provided established only that defendant was at the restaurant, that he went to the lounge after being informed that his nephew needed his help, and that he later left and went home, which corresponds with defendant's own testimony. Allie had no information regarding what happened when defendant went to the lounge and thus her testimony did not disprove or otherwise call into question defendant's testimony that he acted in self-defense, or Kaplan's argument that defendant lacked the requisite intent to commit murder or inflict great bodily harm.

> We also reject any suggestion that defendant was prejudiced, not by the fact that Allie testified against him, but by the fact that her decision to testify "completely eliminated the possibility of a 'misidentification' defense." Apart from the fact that this contention is completely contrary to defendant's claim that self-defense, not misidentification, was the "real defense," defendant does not clearly explain how the prosecutor's decision to call Allie prevented him from claiming misidentification as a defense. Nor does defendant clearly explain how this rendered Berg's representation

ineffective. While Berg revealed the existence of the affidavits by using them to support his motion for a lineup, defendant does not contend and has not shown that but for Berg's action, the false affidavit scheme would not have been discovered. Further, Berg had withdrawn from the case long before Allie obtained the alleged grant of immunity and it was Kaplan who apparently decided against using the misidentification defense that Berg had contemplated. Therefore, the record does not support defendant's claim of ineffective assistance of counsel against Berg.

*Bahoda*, 2016 WL 3267081, at ** 2-3.

The Michigan Court of Appeals' decision was not an unreasonable application of *Strickland*. Bahoda has not shown or clearly explained how he suffered prejudice from Berg's alleged ineffective assistance. Bahoda claims that the affidavit scheme allowed the prosecutor to compel Allie to testify against him, but Allie's testimony was limited to an acknowledgment that she was with Bahoda prior to the incident and that Bahoda was called away to help his nephew. She did not testify about the affidavit scheme, she denied seeing Bahoda at the relevant time, and she did not testify that Bahoda made any incriminating statements. Accordingly, Bahoda has not sufficiently shown how Allie's testimony, even if compelled due to an error by Berg, meaningfully supported the prosecution's case and/or had any real prejudicial impact on his defense. Bahoda is therefore not entitled to habeas relief on this ground.

Bahoda's next allegation of ineffective assistance of counsel concerns an alleged conflict of interest by attorney Brian Legghio.  Bahoda says he consulted with Legghio prior to trial but did not retain Legghio.  Legghio later represented Allie and negotiated an agreement giving her immunity in exchange for her trial testimony (at Bahoda's trial) on behalf of the prosecution. (The immunity agreement gave Allie protection from possible liability in connection with the false affidavit scheme described above.)  Bahoda argues that Legghio had an actual conflict of interest at the time he negotiated Allie's immunity agreement because Legghio had previously consulted with Bahoda.  Bahoda insists that Legghio improperly aided the prosecution by arranging for Allie to testify against him.  Bahoda contends that Kaplan, Bahoda's trial counsel, should have moved to suppress Allie's testimony as a result of Legghio's alleged conflict.

The Michigan Court of Appeals considered this claim on direct review and rejected it:

> Defendant also argues that Kaplan was ineffective because he failed to raise the fact that Legghio had a conflict of interest, and failed to move to preclude Allie from testifying or to disqualify the prosecutor due to that conflict of interest. The record shows that defendant consulted Legghio on one occasion several months before trial, but did not retain him. Defendant contends that Legghio later represented Allie and secured a grant of immunity for her in exchange for her testimony, and that the rules against conflicts of interest prevented Legghio

from representing Allie after having consulted with defendant and this fact should have been brought to the trial court's attention.

An issue of counsel's conflict of interest implicates a defendant's right to the effective assistance of counsel. *Cuyler v. Sullivan*, 446 U.S. 335, 349-350 (1980). "In order to establish a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." If such a showing is made, the defendant "need not demonstrate prejudice in order to obtain relief." *Id*. at 349-350.

At the time Legghio consulted with defendant, he did not have a conflict of interest. Legghio allegedly had a conflict of interest at the time he represented Allie, but he did not represent defendant at that time; defendant was represented by Kaplan. In fact, Legghio never represented defendant. Even a case suggesting that a conflict of interest could arise from the fact that defense counsel was consulted but not retained by a witness involved a situation in which the defendant was represented by the lawyer who had been consulted by the witness. *Freund v. Butterworth*, 165 F3d 839, 856 (11th Cir. 1999) (alleged conflict of interest where defense counsel's firm was previously consulted by a res gestae witness regarding an unrelated matter). Further, defendant has not shown that Legghio's alleged conflict of interest adversely affected Kaplan's performance such that Kaplan was rendered ineffective.

Defendant contends that Kaplan was ineffective for failing to raise Legghio's conflict of interest because Legghio arranged for Allie to testify against defendant regarding "suspected witness tampering," i.e., the phony-affidavit scheme, in exchange for immunity, which "had devastating consequences for Mr. Bahoda's defense" such that Kaplan should have moved to exclude "Allie's harmful testimony." The only harmful testimony Allie could have offered is that defendant was involved in the

false affidavit scheme. But Allie never offered such testimony at trial and her actual testimony was consistent with defendant's own testimony that he was at the restaurant, went to the lounge, and later went home. Therefore, the alleged conflict of interest that resulted in Allie testifying for the prosecution did not prejudice defendant.

Defendant contends that through investigation of the false affidavit scheme, the prosecutor secured Allie's cooperation and threatened to reveal the scheme at trial and file additional charges against defendant "unless he limited his trial defense." This claim is not supported by the record. When the affidavits were first presented, the trial court and Berg both agreed that they would be admissible at trial for impeachment purposes, while the prosecutor argued that they were admissible as substantive evidence as well. Later, both defendant and his attorney moved to exclude the evidence. Counsel's motion was denied before trial. At trial, Kaplan advised the court that "in light of our defense," the evidentiary hearing was not necessary. He later stated that "in light of our defense in this case, the prosecution will not be introducing evidence regarding the alleged witness tampering and intimidation." The prosecutor added, "I think we had made a record last Thursday at the final pretrial and that the statements by the defense are still accurate today, and it's going to be . . . yes, I did it. It's just the level of intent that they're attacking rather than who did." At best, this suggests that the parties may have had an agreement that the prosecution would not introduce evidence regarding the false affidavit scheme and implicate defendant in that scheme if defendant did not use the affidavits to impeach the prosecution's witnesses regarding their identification of defendant, not that the prosecution somehow forced defendant to give up his defense of misidentification.

*Bahoda*, 2016 WL 3267081, at ** 4-5.

The Michigan Court of Appeals' decision was not an unreasonable application of *Strickland*. As explained immediately above, Bahoda has not sufficiently shown how Allie's testimony at trial meaningfully caused him prejudice. He has therefore not shown how he is entitled to habeas relief related to her testimony at trial.

Bahoda argues that the Michigan Court of Appeals should have presumed prejudice under *Cuyler v. Sullivan*, 446 U.S. 335, 345-50 (1980). In that decision, the Supreme Court held that prejudice is presumed if counsel is burdened by an actual conflict of interest. But the presumption of prejudice applies only if the defendant demonstrates that his counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." *Id*. at 350. The Supreme Court has only applied the this presumption of prejudice "in the case of a conflict of interest arising from multiple concurrent representation of defendants." *Jalowiec v. Bradshaw*, 657 F.3d 293, 314-15 (6th Cir. 2011).

Here, while Bahoda had one meeting with Legghio, Bahoda did not retain him. While Legghio thereafter represented Allie, that representation did not occur while he also represented Bahoda. There was no concurrent representation of conflicting interests, and thus the Michigan Court of Appeals did not unreasonably fail to presume prejudice. *See Stewart v. Wolfenbarger*, 468 F.3d 338, 351 (6th Cir. 2006) ("This Court has consistently held that, for Section 2254 cases, the *Cuyler* standard does not apply to claims of conflict of interest other than multiple

concurrent representation."). Bahoda is therefore not entitled to habeas relief on this ground.

<h1 style="text-align:center">4</h1>

Bahoda's final claim of ineffective assistance of counsel concerns his appellate counsel, Daniel Rust, who, Bahoda says, abandoned the claim for an evidentiary hearing on his motion for new trial. The Michigan Court of Appeals considered this claim on direct review and rejected it on the ground that an evidentiary hearing was not required because the claims could be resolved based on the existing record:

> As noted, the parties had initially agreed to a *Ginther* hearing on counsel's motion for a new trial. The hearing was delayed for more than a year because several attorneys appointed to represent defendant on appeal were allowed to withdraw. By the time the matter came before the trial court, appellate counsel asked that the court rule on the basis of the briefs alone. The parties ultimately agreed to have the trial court determine whether a hearing was necessary to resolve the issues raised in the motions, and the trial court determined that they lacked merit, and tacitly concluded that a *Ginther* hearing was not necessary. And, because defendant's claims of ineffective assistance of counsel lack merit, further factual development of the record was unnecessary. Therefore, the trial court did not abuse its discretion in declining to hold an evidentiary hearing, *People v. Unger*, 278 Mich. App. 210, 217 (2008), and appellate counsel was not ineffective for failing to demand a hearing.

*Bahoda*, 2016 WL 3267081, at *7.

Bahoda continues to argue that an evidentiary hearing was necessary for him to develop facts to show how he was prejudiced by his attorneys' ineffectiveness. But Bahoda has failed to proffer any specific evidence that he wished to present at a hearing. Instead, he merely states that "there were numerous factual issues which required development before the trial court." (Pet., ECF #1 at Page ID 59.) In the absence of a specific offer or proof as to what he could have presented in order to be entitled to the relief he seeks, the Court declines to grant Bahoda habeas relief on this ground. Without such an offer, Bahoda has failed to demonstrate prejudice. The Court further declines to grant habeas relief on this ground because Bahoda has not shown that Rust's decision to have the state court rule on the motions based upon the papers was objectively unreasonable. Finally, Bahoda has not shown that the Michigan Court of Appeals erred when it concluded that all of Bahoda's ineffective assistance claims were properly resolved without an evidentiary hearing.

**B**

Bahoda's last claims in the petition relate to his sentencing. Bahoda first asserts that the state trial court sentenced him based on inaccurate information when it failed to apprehend that as a result of his conviction in this case, Bahoda would be returned to prison to serve the remainder of the life sentence for which he was on parole at the time of this offense. The Michigan Court of Appeals considered this claim on direct review and rejected it:

First, he argues that he was sentenced on the basis of inaccurate information, or the trial court misapprehended the law, because the trial court erroneously believed that defendant would be required to serve a lesser sentence, of approximately two to four years, on his prior conviction. We reject this argument because there is nothing in the record to suggest that the trial court considered how much time defendant would serve on his prior conviction when passing sentence. Instead, that issue was only discussed in the context of a possible plea before trial. Additionally, both defendant and his attorney advised the court that defendant may not be required to complete his life sentence and "error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence." *People v. Griffin*, 235 Mich.App 27, 46; 597 NW2d 176 (1999). Most significantly, defendant and his attorney disagreed on how much time defendant would have to serve on his life sentence and, at the end of the discussion, the trial court recognized that defendant was going back to prison for the parole violation even though it did not know how long defendant would serve for that violation. At sentencing, the court sentenced defendant for assault with intent to do great bodily harm conviction, without any comment on how much time defendant would be required to serve for his parole sentence. Therefore, defendant has not shown a right to relief on this ground.

*Bahoda*, 2016 WL 3267081, at *7.

This decision was not unreasonable. The Court has reviewed this claim of error related to Bahoda's sentence and disagrees with Bahoda that the trial court sentenced him based on inaccurate information and/or a misunderstanding of his sentence. Bahoda has therefore not shown an entitlement to habeas relief on this ground.

Bahoda next argues that the state trial court violated his Sixth Amendment jury trial rights by scoring the sentencing guidelines based on facts not admitted by him nor found beyond a reasonable doubt by a jury. The Michigan Court of Appeals considered this claim on direct review and concluded that Bahoda was not entitled to any relief because he could not show prejudice as a result of the alleged error:

> Second, defendant argues that his sentence was based on impermissible judicial fact-finding, contrary to *People v. Lockridge*, 498 Mich. 358; 870 NW2d 502 (2015). The trial court addressed and decided this issue when considering defendant's post-sentencing motion. Therefore, we consider this issue preserved. *People v. Stokes*, 312 Mich.App 181, 192, 198; 877 NW2d 752 (2015).
>
> The core holding of *Lockridge* is that the sentencing guidelines are unconstitutional to the extent that they "require judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables ... that mandatorily increase the floor of the guidelines minimum sentence range[.]" *Lockridge*, 498 Mich. at 364. To remedy this constitutional violation, the Court severed MCL 769.34(2) to the extent that it makes the guidelines mandatory. *Id.* at 391. Although the guidelines are no longer mandatory, "they remain a highly relevant consideration in a trial court's exercise of sentencing discretion" and thus the trial court must still score the guidelines and "consult the applicable guidelines range and take it into account when imposing a sentence." *Id.* at 391–392.
>
> We agree that defendant's 10–point score for OV 3, "bodily injury requiring medical treatment occurred to a victim," MCL 777.33(1)(d), was based on judicial fact-finding because defendant's conviction of assault with intent to do great bodily harm less than murder did not

require the jury to find either that defendant actually caused bodily injury, *see People v. Dillard*, 303 Mich.App 372, 378; 845 NW2d 518 (2013), or that any injury sustained by the victim necessitated medical treatment, and these facts also were not admitted by defendant. Further, but for judicial fact-finding in scoring OV 3, defendant would be in OV Level III (25 to 35 points), instead of OV Level IV (35–49 points), and his sentencing guidelines range would be 10 to 23 months (or 10 to 28 months as a second-offense habitual offender), instead of 19 to 38 months (or 19 to 47 months as a second-offense habitual offender). MCL 777.21(3)(a); MCL 777.65. Because the trial court sentenced defendant before *Lockridge* was decided, when application of the guidelines was mandatory, and judicial fact-finding in the scoring of OV 3 increased the floor of defendant's sentencing guidelines range, defendant has shown a Sixth Amendment violation. However, we conclude that defendant is not entitled to appellate relief.

The remedy for a *Lockridge* violation is to remand the case to the trial court to determine whether it would have imposed a materially different sentence but for the constitutional error (i.e., whether the court would have imposed a different sentence knowing that the guidelines are advisory, and not mandatory). *Lockridge*, 498 Mich. at 395–398; *Stokes*, 312 Mich.App at 198-199. In this case, that determination has already been made. The trial court had the opportunity to reconsider its sentence when deciding defendant's post-sentencing motion, which was heard after *Lockridge* was decided. The court noted that "defendant's sentence in this matter was calculated on the basis of offense variables calculated in violation of the Sixth Amendment pursuant to the holding in *Lockridge*." It concluded, however, that "[n]otwithstanding the fact that the guidelines were advisory, the Court finds that the sentence suggested by the guidelines was reasonable," and it stated that "even if the Court had recognized the guidelines as advisory only at the time it imposed defendant's sentence, the Court would nevertheless have

rendered the same sentence in this case." Because the trial court has already re-evaluated defendant's sentence in light of *Lockridge* and determined that it would not have imposed a different sentence if it had known that the guidelines were only advisory, and not mandatory, defendant is not entitled to any additional relief.

*Bahoda*, 2016 WL 3267081, at *7.

The Michigan Court of Appeals' decision was not unreasonable. It is true, as Bahoda argues, that Michigan's mandatory sentencing guideline regime in effect at the time of his sentencing was later declared unconstitutional and in violation of clearly established federal law. *See Robinson v. Woods*, 901 F.3d 710, 716-18 (6th. Cir. 2018) ("At bottom, Michigan's sentencing regime violated *Alleyne's* prohibition on the use of judge-found facts to increase mandatory minimum sentences"). However, when the state trial court denied Bahoda's motion for reconsideration of the denial of his motion for new trial, it said that it would have imposed the same exact sentence had the guidelines been merely advisory. (*See* ECF #7-3.) The Michigan Court of Appeals affirmed Bahoda's sentence on that basis, and that holding was not unreasonable. Accordingly, Bahoda is not entitled to habeas relief on this ground.

## IV

In order to appeal the Court's decision, Bahoda must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. §

24

2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *See Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason would not debate the Court's conclusion that Bahoda has failed to demonstrate entitlement to habeas relief with respect to any of his claims because they are all devoid of merit. Therefore, the Court will **DENY** Bahoda a certificate of appealability.

Finally, although this Court declines to issue Bahoda a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status if it finds that an appeal is being taken in good faith. *See id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). Although jurists of reason would not debate this Court's resolution of Bahoda's claims, an appeal could be taken in good faith.

Accordingly, the Court **GRANTS** Bahoda permission to proceed *in forma pauperis* on appeal.

**V**

Accordingly, for the reasons stated above, the Court 1) **DENIES WITH PREJUDICE** Bahoda's petition for a writ of habeas corpus (ECF #1); 2) **DENIES** Bahoda a certificate of appealability, and (3) **GRANTS** Bahoda permission to proceed *in forma pauperis* on appeal.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: February 27, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 27, 2019, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764